**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Roy McKINNEY, Defendant-Appellant.**

**No. 17103.**

United States Court of Appeals
Sixth Circuit.

June 26, 1967.

---

Burt W. Griffin, Cleveland, Ohio (Court-appointed), for appellant.

James L. Oakar, Asst. U. S. Atty., Cleveland, Ohio (Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before WEICK, Chief Judge, and O'SULLIVAN and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a conviction for aiding and abetting the harboring of a fugitive and for conspiring to harbor a fugitive in violation of 18 U.S.C. §§ 2, 371, 1071.

The fugitive, Louis Edward Baker, was sought for the robbery of an Indiana bank, and a federal warrant had been issued for his arrest on July 21, 1964. Investigation by the F.B.I. indicated that Baker was in Cleveland during July, 1964, and had rented an apartment on St. Clair Avenue. A search of this apartment, pursuant to a search warrant, did not reveal the presence of Baker, but did disclose a distinctive bar, which was later found in co-defendant Ella Mae Snyder's apartment, where Baker was ultimately apprehended.

Appellant and Baker traveled together to Boston, Massachusetts in July, where they stayed with Prentice Fitzpatrick, who later drove Baker back to Cleveland. Fitzpatrick and Janet Lothery, an acquaintance of appellant's, testified at the trial that Baker spent some time in or around the Snyder apartment after his return to Cleveland. This information had been communicated to the F.B.I. by Fitzpatrick and Lothery and, on August 5, 1964, three F.B.I. agents went to the apartment. They informed Ella Mae Snyder that Baker was wanted for robbery and that it was a federal offense to harbor a fugitive, and, without a search warrant, unsuccessfully searched the apartment for Baker. On August 12, appellant was stopped by the F.B.I. in the vicinity of the apartment and was informed that Baker was wanted and that harboring was an offense.

At about noon on September 8, 1964, F.B.I. agent Burke received information, the source and nature of which was undisclosed at either a pretrial hearing or the trial itself, that Baker was then at

the Snyder apartment. Later that afternoon, Burke and six other agents drove to the area of the apartment. Two agents were assigned to approach the apartment from the rear. Burke and two others approached from the front. Appellant came down the front stairs and, upon being questioned, either denied the presence of Baker in the apartment (Burke's version of the conversation) or denied knowledge of Baker's presence (appellant's version). Upon further questioning, appellant admitted that Baker was in the apartment. While this questioning was in progress, the two agents who had approached from the rear entered the apartment after informing Ella Mae Snyder that they were seeking Baker. One of these agents discovered Baker hiding in a closet, while the other opened the front door to admit the remaining agents.

Burke testified at the trial that after Baker had been found, he questioned Snyder in appellant's presence. He said:

> I asked Ella Mae Snyder why she did not tell me why Baker was in the apartment, that Louis Edward Baker was in the apartment, and she stated that she knew this man as Johnny Baker, referring to the man that we had apprehended in the closet.

> She stated that Johnny Baker had come to her residence several days earlier after she had received a telephone call from Roy McKinney indicating that he wanted a friend of his to stay at her home, and that they would pay her $20.

It appears from the record that appellant did not contemporaneously deny Snyder's allegations.

Appellant bases his appeal on these grounds, all of which were properly preserved for our consideration: (1) evidence obtained as a result of the September 8 search of the Snyder apartment, including the fact of Baker's presence, should not have been admitted because the search violated the Fourth Amendment; (2) appellant's September 8 statement to agent Burke concerning Baker's whereabouts should not have been admit-

ted because it was obtained in violation of his Fifth Amendment rights; (3) agent Burke's testimony concerning the statement made by Snyder in appellant's presence should not have been admitted because its admission violated appellant's Fifth Amendment rights, and (4) the trial court should have ordered that appellant and his co-defendant Snyder be tried separately.

Appellee concedes, in its brief, that with regard to ground (3), Burke's testimony "was properly received only against co-defendant [Ella Mae Synder]," and that the trial court made clear in its instructions that it could not be used against appellant. While we agree that the testimony was admissible against Snyder, we do not agree that the instructions so limited the use of the testimony, and we therefore hold that appellant's conviction must be reversed because of the highly prejudicial character of this testimony.

██ It seems clear that the theory on which the trial court admitted Burke's testimony concerning Snyder's accusations was that appellant's silence, in the face of these accusations, constituted his admission of their truth. The court said at the time of Burke's testimony:

> As I understand it, he is talking to Ella Mae Snyder at this time, and the only matter before the Court is to determine whether or not Roy McKinney was able to hear the conversation, and that is what I am trying to determine, if he could hear the conversation, and if anything was said which might affect Roy McKinney. * * * If it develops he could hear and was paying attention, then of course the court will rule one way. If it develops he could not hear, the Court will rule another. * * *

Snyder's statements, then, were not objectionable as hearsay, since they were not technically introduced to prove their own truth; the probative element was supplied not by the statements themselves but by appellant's admission inferred from his silence. McCormick, Evidence § 247. The admission by silence,

however, was made while appellant and Snyder were undergoing F.B.I. interrogation and at a time when they were obviously accused of having committed an offense. Permitting this admission to be received into evidence therefore contravened appellant's right under the Fifth Amendment to remain silent when in custody and accused of a crime. United States v. Pearson, 344 F.2d 430 (6th Cir. 1965); Ivey v. United States, 344 F.2d 770 (5th Cir. 1965). As this court noted in McCarthy v. United States, 25 F.2d 298 (6th Cir. 1928), if such admissions were properly received into evidence the traditional warning given to criminal suspects would have to be modified to advise: "If you say anything, it will be used against you; if you do not say anything, that will be used against you." 25 F.2d at 299.

The instruction which, according to appellee, limited Burke's testimony so that it could be used only against co-defendant Snyder, was the following:

I further instruct you that any conspiracy which may have been entered into terminates with the accomplishment or frustration of the object of the conspiracy. So in this case, any conspiracy which might have existed would have terminated with the arrest of Louis Edward Baker, and any statements or conduct of one defendant made or done thereafter would not be attributable to the other defendant.

Appellee's argument concerning the limiting effect of this instruction presupposes that the only ground on which the statements of one conspirator might be received against a co-conspirator is that these statements were made during the course of the conspiracy and in furtherance of it, and can therefore be regarded as vicarious admissions. The quoted instruction would then inform the jury that Snyder's statements could not be used against McKinney, since these statements were made after the purpose of the conspiracy had been frustrated. But, as we have already suggested, the theory on which Burke's testimony was admitted was that appellant's silence could be taken

as an admission of the truth of Snyder's statements. Cf. Krulewitch v. United States, 366 U.S. 440, 442, 69 S.Ct. 716, 93 L.Ed. 790 (1949). The court in fact specifically instructed the jury that a statement made by one conspirator after the conspiracy had terminated "may not be considered as evidence against any person *who was not present and heard the statement.*" (emphasis added) The instruction relied upon by appellee as limiting was therefore not intended to pertain to Burke's testimony at all, and could not have precluded the jury from considering this testimony in rendering its verdict against McKinney.

Although appellant's conviction must be reversed for the reason already considered, it will be useful to discuss appellant's other contentions because of the possibility that the same issues will arise should the government decide to proceed with a new trial.

 It is appellant's contention with respect to the search of Ella Mae Snyder's apartment that, in the absence of exceptional circumstances, a search warrant must be obtained before entering the dwelling of a third party to execute a valid arrest warrant. Appellant relies principally on Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L. Ed. 436 (1947), which enunciated the rule that a search warrant must be obtained in the absence of exceptional circumstances, but did not involve the element of a valid arrest warrant. A contention identical to appellant's was advanced to the Court of Appeals for the Fourth Circuit in Lankford v. Gelston, 364 F.2d 197 (1966). The court, although ordering the entry of a decree

enjoining the Police Department [of Baltimore] from conducting a search of any private house to effect the arrest of any person not known to reside therein, whether with or without an arrest warrant, where the belief that the person is on the premises is based only on an anonymous tip and hence without probable cause,

declined to hold a search warrant to be

necessary in executing a valid arrest warrant on the premises of a third party. 364 F.2d at 206. We hold here that a search warrant is not necessary to execute an arrest warrant in such circumstances.[1] We agree with the observation that the guarantee of the Fourth Amendment that people shall be secure in their homes from unreasonable searches applies whether the government is searching for objects or for a person for whom an arrest warrant has been issued. But even if we were to accept appellant's premise that a search warrant must be obtained in the absence of exceptional circumstances,[2] there is good reason to hold that the issuance of an arrest warrant is itself an exceptional circumstance obviating the need for a search warrant. An arrest warrant is validly issued only when a magistrate is convinced that there is probable cause to believe that the named party has committed an offense. This determination, together with the inherent mobility of the suspect, would justify a search for the suspect provided the authorities reasonably believe he could be found on the premises searched. In *Johnson,* supra, the Supreme Court itself suggested that in the case of a suspect "fleeing or

likely to take flight," it would be unnecessary to obtain a search warrant. 333 U.S. at 15, 68 S.Ct. at 369. In order for the search which revealed the presence of Baker in the Snyder apartment to have been valid, however, it must be determined that the F.B.I. reasonably believed Baker to have been there.[3]

In determining whether the F.B.I. agents had reason to believe that Baker was in the Snyder apartment on September 8, we cannot consider items which they discovered in the course of their search. Hence, the fact that a distinctive bar which earlier had been seen in Baker's apartment was later found in Snyder's cannot be used to justify the search. The trial court, in holding the search to be lawful, said:

[T]he agents did not enter the apartment until * * * after McKinney had changed his story and told them that Baker was in the premises. On this basis, the Court believes the agents would have reasonable cause to believe that Baker was in the apartment, and entered the apartment of Ella Mae Snyder to execute a lawful arrest warrant.

1. We limit our consideration here to a search for the person named in the arrest warrant. The trial judge in the instant case granted a motion to suppress any physical evidence not in the immediate control of Baker, and we do not suggest that he erred in so doing.

2. Mr. Justice Frankfurter, dissenting in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), regarded *Rabinowitz* as, in effect, overruling *Johnson,* 339 U.S. at 85, 70 S.Ct. 430. *Rabinowitz* did explicitly overrule Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), "[t]o the extent that *Trupiano* * * * requires a search warrant solely upon the basis of the practicality of procuring it rather than upon the reasonableness of the search * * *." 339 U.S. at 66, 70 S.Ct. at 435. Whether *Rabinowitz* also undermines *Johnson* depends upon whether the standard enunciated in *Johnson* restricts warrantless searches to as great an extent as does the standard enunciated in *Trupiano.* It may be that

the *Trupiano* requirement that a search warrant be obtained whenever practicable would require a warrant in a greater number of instances than would the *Johnson* requirement that a warrant be obtained unless exceptional circumstances existed.

3. Restatement, Torts 2d, § 204 provides:
 The privilege to make an arrest for a criminal offense carries with it the privilege to enter land in the possession of another for the purpose of making such an arrest, if the person sought to be arrested is on the land or if the actor reasonably believes him to be there.
 To the extent that this provision requires the arresting authority to have a reasonable belief that the person to be arrested is on the land to be entered, it is an accurate statement of what the Fourth Amendment demands when an arrest warrant is to be executed on the premises of a third party. But the mere fact that the person named in the warrant happens to be on the premises would not satisfy the Constitutional requirement that persons be free from unreasonable searches.

As appellant points out, however, the two agents who had approached the apartment from the rear were conducting a search while other agents were questioning appellant at the front of the building. It was one of the agents who had entered the rear door, and not one of the agents who spoke to appellant, who discovered Baker hiding in the closet. However, there are other factors which can properly be considered in determining the existence of probable cause, namely, the unspecified tip which Burke mentioned during the hearing on the motion to suppress, and the information which, according to testimony at the trial, had been given to the F.B.I. by Fitzpatrick and Lothery. On appeal, we are not restricted to considering evidence offered during the hearing on the motion to suppress. Carroll v. United States, 267 U.S. 132, 163, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Rent v. United States, 209 F.2d 893, 896 (5th Cir. 1954).

■ As previously noted, the Court of Appeals for the Fourth Circuit, in Lankford v. Gelston, supra, ordered that the Baltimore police department be enjoined from searching the premises of third parties to execute arrest warrants where the search was based only upon an anonymous tip. In the recent case of McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Supreme Court held that the tip of an anonymous informer afforded probable cause for the arrest of a suspected violator of the narcotics laws. Although *McCray* might be distinguished both from *Lankford* and the instant case on the basis that the informer in *McCray* had proven reliable on prior occasions,[4] this distinction might not be sufficient to require a different result. We need not resolve this question here, however,

for in the instant case the F.B.I. had more to rely upon than the September 8 anonymous tip mentioned by Burke. The agents also had the information received from Fitzpatrick and Lothery, obtained about a month prior to the September 8 search. We do not suggest that the facts here present an easy case, but considering the totality of the available information, we hold that the search of the Snyder apartment by the F.B.I. on September 8 was not unlawful. The fact of Baker's presence in the apartment was therefore properly received into evidence at appellant's trial.

■ Appellant's remaining contentions may be considered more briefly. He claims that his statements concerning Baker's whereabouts, elicited by the F.B.I. in front of the Snyder apartment on September 8, were obtained in violation of his Fifth Amendment right against self-incrimination. The trial court found, and we agree, that

> the interrogation of Mr. McKinney was a part of the efforts to apprehend Baker and was not with a view of arresting or charging Mr. McKinney with a crime.

Any application of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), relied upon by appellant, is therefore not apposite. For the same reason, and for the additional reason of non-retroactivity, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not in point. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ Finally, appellant contends that he should have been tried separately from his co-defendant, Ella Mae Snyder. As we recently pointed out in United States v. Vida, 370 F.2d 759 (1966),

4. Professor Irving Younger of the New York University Law School has suggested that the rule announced in *McCray* might have the effect of tempting law enforcement authorities to claim the aid of nonexistent informers. New York Times, May 14, 1967, p. 112, Col. 1. Without commenting on the validity of

this suggestion, we observe that the purpose of preserving the often valuable institution of the informer might be served as well by conducting *in camera* hearings where the identity of the informer is revealed only to the judge, as by permitting the police to rely upon unidentified informers.

the decision to order separate trials is within the discretion of the trial judge. 370 F.2d at 765. We find no abuse of discretion in the instant case. Appellant relies heavily on the decision of the Court of Appeals for the Fifth Circuit in De Luna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (1962), in which the court held that separate trials should have been ordered because in a joint trial the attorney for one accused conspirator could comment on the failure of the second accused conspirator to take the stand, thereby depriving the second of his right to remain silent. We agree with the concurring opinion in De Luna, however, to the effect that such comment by the attorney would not be permissible.

The conviction is reversed and the case is remanded for a new trial.