617 F.2d 157
 LOCAL NO. 1903 OF the INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW; Gary Swanson, President of Local No. 1903;
Jack Harney, Recording Secretary of Local No. 1903; Joan
Rasmussen, Vice President of Local No. 1903; William
Wolfenbarger, Secretary and Treasurer of Local No. 1903;
John Doe and Mary Doe, Members of Local No. 1903, et al.,
Plaintiffs-Appellants,
v.
BEAR ARCHERY, Division of Victor Comptometer Corporation;
Robert F. Kelly, President of Bear Archery, Division of
Victor Comptometer; Nelson A. Miles, Attorney for Defendant
Bear Archery, Defendant City of Grayling, Defendant Chief of
Police Stephan, and Defendant City Police Department; Peter
Stephan, individually and as Chief of Police, City of
Grayling, Michigan; City of Grayling, Michigan; Harold
Hatfield, Jr., individually and as Sheriff of Crawford
County, Michigan; Crawford County Sheriff Department; John
B. Huss, individually and as County Prosecutor, County of
Crawford, Michigan; and Crawford County, Michigan,
Defendants-Appellees.
 No. 78-1012.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 30, 1980.
Decided March 6, 1980.
 
 William Rastetter, Cedar, Mich., James M. Olson, Traverse City, Mich., Robert A. Hess, Roscommon, Mich., Leonard R. Page, Detroit, Mich., L. Kent Walton, Traverse City, Mich., Alan V. Reuther, Asst. Gen. Counsel, Detroit, Mich., for plaintiffs-appellants.
 Douglas J. Read, Williams, Coulter, Cunningham, Davison & Read, Traverse City Mich., for Crawford Co.
 Richard W. Ford, Running, Wise & Wilson, Robert E. Kuhn, Traverse City, Mich., for Grayling Co.
 Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and WISEMAN,* District Judge.
 PER CURIAM.
 
 
 1
 This appeal is taken from a District Court's judgment dismissing a civil rights action brought pursuant to 28 U.S.C. § 1331(a) (1976), claiming a right to relief under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 (1976), as well as the Fifth and Fourteenth Amendments to the Constitution of the United States.
 
 
 2
 The underlying dispute grows out of asserted collective bargaining rights on the part of plaintiff, Local No. 1903 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (henceforth UAW) which asserted rights were denied by defendant, Bear Archery, Division of Victor Comptometer Corporation (henceforth Bear Archery). The dispute in question resulted in a strike which served to divide the City of Grayling, Michigan and the County of Crawford in bitter controversy. At the aftermath of the strike, the UAW filed the instant complaint, alleging (among other things):
 
 
 3
 Defendants herein under color of law have by act or neglect deprived Plaintiffs of their constitutionally and federally protected rights of speech, picketing, sign communication or other forms of communicative or informational expression; or Defendants have by act or neglect chilled the exercise of such rights and privileges; the acts or neglect or omissions consist of in part the following:
 
 
 4
 Following the paragraph just quoted above, plaintiff-appellant recited (in 20 separate paragraphs) a variety of asserted actions on the part of city and county officials which they rely on as constituting injury.
 
 
 5
 The District Judge in the Eastern District of Michigan who heard this case held that defendants Crawford County, Crawford County Sheriff Department, City of Grayling and City of Grayling Police Department are absolutely immune from suit under 42 U.S.C. § 1983 (1976):
 
 
 6
 Said defendants are not persons under 42 USC 1983, and no cause of action can be found against them unless they are subject to having liability imposed vicariously under the doctrine of respondeat superior. However, this doctrine also does not apply to suits under 42 USC 1983.
 
 
 7
 After the District Judge's decision in this case, the Supreme Court of the United States decided Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1958). In a lengthy analysis the Supreme Court overruled Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), to the extent that it was inconsistent with the holdings in Monell, supra. In the opinion of the Court, the Supreme Court stated:
 
 
 8
 Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.[54] Local governing bodies,[55] therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): "Congress included customs and usages (in § 1983) because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."[56]
 
 
 9
 On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.
 
 
 10
 We begin with the language of § 1983 as passed:
 
 
 11
 "(A)ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . ." 17 Stat. 13 (emphasis added).
 
 
 12
 The italicized language plainly imposes liability on a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights. At the same time, that language cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor. Indeed, the fact that Congress did specifically provide that A's tort became B's liability if B "caused" A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent.[57] See Rizzo v. Goode, 423 U.S. 362, 370-371, 96 S.Ct. 598, 602, 46 L.Ed.2d 561 (1976).
 
 
 13
 Equally important, creation of a federal law of respondeat superior would have raised all the constitutional problems associated with the obligation to keep the peace, an obligation Congress chose not to impose because it thought imposition of such an obligation unconstitutional. To this day, there is disagreement about the basis for imposing liability on an employer for the torts of an employee when the sole nexus between the employer and the tort is the fact of the employer-employee relationship. See W. Prosser, Law of Torts § 69, p. 459 (4th ed. 1971). Nonetheless, two justifications tend to stand out. First is the common-sense notion that no matter how blameless an employer appears to be in an individual case, accidents might nonetheless be reduced if employers had to bear the cost of accidents. See, e. g., ibid.; 2 F. Harper & F. James, The Law of Torts, § 26.3, pp. 1368-1369 (1956). Second is the argument that the cost of accidents should be spread to the community as a whole on an insurance theory. See, e. g., id., § 26.5; Prosser, supra, at 459. 58
 
 
 14
 The first justification is of the same sort that was offered for statutes like the Sherman amendment: "The obligation to make compensation for injury resulting from riot is, by arbitrary enactment of statutes, affirmatory law, and the reason of passing the statute is to secure a more perfect police regulation." Globe 777 (Sen. Frelinghuysen). This justification was obviously insufficient to sustain the amendment against perceived constitutional difficulties and there is no reason to suppose that a more general liability imposed for a similar reason would have been thought less constitutionally objectionable. The second justification was similarly put forward as a justification for the Sherman amendment: "we do not look upon (the Sherman amendment) as a punishment . . . . It is a mutual insurance." Id., at 792 (Rep. Butler). Again, this justification was insufficient to sustain the amendment.
 
 
 15
 We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation found by the District Court, see supra, at 660-662, and n. 2, we must reverse the judgment below. In so doing, we have no occasion to address, and do not address, what the full contours of municipal liability under § 1983 may be. We have attempted only to sketch so much of the § 1983 cause of action against a local government as is apparent from the history of the 1871 Act and our prior cases, and we expressly leave further development of this action to another day.
 
 
 16
 Monell v. New York City Department of Social Services, 436 U.S. at 690-695, 98 S.Ct. at 2035-2038.
 
 
 17
 Under these circumstances, we vacate the judgment of the District Court previously referred to and remand for further consideration of this case under the standards quoted above of Monell v. New York City Department of Social Services, supra.
 
 
 
 *
 Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [54]
 There is certainly no constitutional impediment to municipal liability. "The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment." Milliken v. Bradley, 433 U.S. 267, 291 (97 S.Ct. 2749, 2762, 53 L.Ed.2d 745) (1977); see Ex parte Virginia, 100 U.S., (339) at 347-348 (25 L.Ed. 676). For this reason, National League of Cities v. Usery, 426 U.S. 833 (96 S.Ct. 2465, 49 L.Ed.2d 245) (1976), is irrelevant to our consideration of this case. Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability. See, e. g., Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (96 S.Ct. 2666, 2671, 49 L.Ed.2d 614) (1976); Lincoln County v. Luning, 133 U.S. 529, 530 (10 S.Ct. 363, 33 L.Ed. 766) (1890). Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes
 
 
 [55]
 Since official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent at least where Eleventh Amendment considerations do not control analysis our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name
 
 
 [56]
 See also Mr. Justice Frankfurter's statement for the Court in Nashville, C. & St. L. R. Co. v. Browning, 310 U.S. 362, 369 (60 S.Ct. 968, 972, 84 L.Ed. 1254) (1940):
 "It would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice . . . can establish what is state law. The Equal Protection Clause did not write an empty formalism into the Constitution. Deeply embedded traditional ways of carrying out state policy, such as those of which petitioner complains, are often tougher and truer law than the dead words of the written text."
 
 
 [57]
 Support for such a conclusion can be found in the legislative history. As we have indicated, there is virtually no discussion of § 1 of the Civil Rights Act. Again, however, Congress' treatment of the Sherman amendment gives a clue to whether it would have desired to impose respondeat superior liability
 The primary constitutional justification for the Sherman amendment was that it was a necessary and a proper remedy for the failure of localities to protect citizens as the Privileges or Immunities Clause of the Fourteenth Amendment required. See supra, at 670-673. And according to Sherman, Shellabarger, and Edmunds, the amendment came into play only when a locality was at fault or had knowingly neglected its duty to provide protection. See Globe 761 (Sen. Sherman); id., at 756 (Sen. Edmunds); id., at 751-752 (Rep. Shellabarger). But other proponents of the amendment apparently view it as a form of vicarious liability for the unlawful acts of the citizens of the locality. See id., at 792 (Rep. Butler). And whether intended or not, the amendment as drafted did impose a species of vicarious liability on municipalities since it could be construed to impose liability even if a municipality did not know of an impending or ensuing riot or did not have the wherewithal to do anything about it. Indeed, the amendment held a municipality liable even if it had done everything in its power to curb the riot. See supra, at 668; Globe 761 (Sen. Stevenson); id., at 771 (Sen. Thurman); id., at 788 (Rep. Kerr); id., at 791 (Rep. Willard). While the first conference substitute was rejected principally on constitutional grounds, see id., at 804 (Rep. Poland), it is plain from the text of the second conference substitute which limited liability to those who, having the power to intervene against Ku Klux Klan violence, "neglect(ed) or refuse(d) so to do," see Appendix to this opinion, infra, at 704, and which was enacted as § 6 of the 1871 Act and is now codified as 42 U.S.C. § 1986 that Congress also rejected those elements of vicarious liability contained in the first conference substitute even while accepting the basic principle that the inhabitants of a community were bound to provide protection against the Ku Klux Klan. Strictly speaking, of course, the fact that Congress refused to impose vicarious liability for the wrongs of a few private citizens does not conclusively establish that it would similarly have refused to impose vicarious liability for the torts of a municipality's employees. Nonetheless, when Congress' rejection of the only form of vicarious liability presented to it is combined with the absence of any language in § 1983 which can easily be construed to create respondeat superior liability, the inference that Congress did not intend to impose such liability is quite strong.
 
 
 [58]
 A third justification, often cited but which on examination is apparently insufficient to justify the doctrine of respondeat superior, see, e. g., 2 F. Harper & F. James, § 26.3, is that liability follows the right to control the actions of a tortfeasor. By our decision in Rizzo v. Goode, 423 U.S. 362 (, 96 S.Ct. 598, 46 L.Ed.2d 561) (1976), we would appear to have decided that the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability. See id., at 370-371 (, 96 S.Ct. at 602)