746 F.2d 337
 Bertold J. PEMBAUR, M.D., Plaintiff-Appellant,
v.
CITY OF CINCINNATI; Hamilton County; Hon. Norman Murdock,
County Commissioner; Hon. Robert A. Taft, II,
County Commissioner; William P. Whalen,
Jr.; and Russell L. Jackson,
Defendants-Appellees.
 No. 83-3325.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 10, 1984.
Decided Oct. 18, 1984.
 
 Robert E. Manley (argued), Manley, Jordan & Fischer, Cincinnati, Ohio, for plaintiff-appellant.
 Jerry F. Luttenegger (argued), Roger E. Friedmann (LC) (argued), James W. Harper, Cincinnati, Ohio, for defendants-appellees.
 Before KENNEDY and JONES, Circuit Judges, and COHN, District Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 This matter is before the Court on the appellant's appeal from the district court's order dismissing his civil rights action under 42 U.S.C. Sec. 1983.
 
 
 2
 The appellant, Bertold J. Pembaur, a licensed doctor specializing in family medicine, maintains an office known as the Rockdale Medical Center (Center), which is located at 430 Rockdale Avenue in Cincinnati. During the spring of 1977, the Hamilton County Grand Jury indicted Pembaur in a six-count indictment. During the investigation of the charges, subpoenas were issued for the appearance of two of Pembaur's employees before the Grand Jury. These employees failed to appear at the designated time and capiases or writs of attachment were issued for their arrest.
 
 
 3
 On May 19, 1977, two deputy sheriffs from the Hamilton County Sheriff's Department appeared at the Center without a search warrant to serve the capiases which listed the employees' home addresses and not the Center's address. Upon their arrival, Pembaur refused to let them into the inner offices to search for the employees. In fact, he barricaded the door to those offices, called the press and the Cincinnati Police Department, and continued to refuse access to the inner offices.
 
 
 4
 Because of Pembaur's actions, one of the deputies called the Sheriff's office who advised him to call William P. Whalen, Jr., an assistant prosecuting attorney for Hamilton County. Simon Leis, prosecutor at the time, told Whalen to instruct the officers to serve the capiases. When the deputies were unsuccessful in their attempt to force the door, a Cincinnati police officer took an axe and chopped the door down which enabled the deputies and police officers to enter the inner offices. The employees, however, were not found.
 
 
 5
 Subsequently, Pembaur filed a civil rights action in the district court under Sec. 1983 alleging deprivation of his Fourth and Fourteenth Amendment rights. Pembaur named the City of Cincinnati (City), Hamilton County (County), the Hamilton County Commissioners in their official capacity (Commissioners), the Chief of the Cincinnati police department, the Hamilton County Sheriff, William Whalen, six unnamed Cincinnati police officers, two unnamed deputy sheriffs, and Russell Jackson, a Secret Service officer appointed by the county prosecutor pursuant to state law as defendants. After a bench trial, the district court made certain findings of fact and conclusions of law and, as a consequence, dismissed Pembaur's action in its entirety. On appeal, Pembaur raises only the dismissal of his claims against Whalen, the County, and the City as grounds for reversal.
 
 
 6
 In a case tried to the court, the district court's findings of fact will be set aside only if they are clearly erroneous. Fed.R.Civ.P. 52(a). A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Kennedy v. Commissioner, 671 F.2d 167, 174 (6th Cir.1982) (citing United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Ultimate findings of fact, however, are subject to de novo review, as are the district court's conclusions of law, because they require the application of legal principles. See Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 143 & n. 19 (6th Cir.1983). We turn now to a review of the district court's factual and legal findings.
 
 
 7
 * As to Pembaur's claim against Whalen, the district court concluded that Whalen was entitled to at least a good faith immunity for his role in the events that led to the lawsuit and that Whalen's actions had not violated any clearly established statutory and constitutional rights of Pembaur. Thus, the court held that Whalen could not be held liable for any damages.
 
 
 8
 On appeal, Pembaur concedes that Whalen was entitled to good faith immunity. He contends, however, that the district court erred in finding that Whalen's actions did not violate any clearly established constitutional right.
 
 
 9
 In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. Thus, before applying the shield of good faith immunity we must make two determinations. First, we must determine what the applicable law was at the time of the alleged violation. Second, we must determine whether that law was clearly established. Id.
 
 
 10
 In United States v. McKinney, 379 F.2d 259, 263 (6th Cir.1967), we held that a search warrant is not necessary to execute an arrest warrant on the premises of a third party if the authorities have probable cause to believe that the suspect could be found on the premises. We reasoned that "even if we were to accept appellant's premise that a search warrant must be obtained in the absence of exceptional circumstances, there is good reason to hold that the issuance of an arrest warrant is itself an exceptional circumstance obviating the need for a search warrant." Id. at 263 (footnote omitted). Pembaur asserts that this rule of law was changed in 1974 by this Court's opinion in United States v. Shye, 492 F.2d 886 (6th Cir.1974). We disagree.
 
 
 11
 In Shye, we followed the D.C. and Fourth Circuits by holding that a warrantless entry of a residence by authorities to effect an arrest was on the same constitutional footing as a warrantless entry to conduct a search; both are per se unreasonable absent exigent circumstances. 492 F.2d at 891, 893 (following Dorman v. United States, 435 F.2d 385 (D.C.Cir.1970) (en banc); Vance v. North Carolina, 432 F.2d 984 (4th Cir.1970)). We upheld the arrests in Shye, however, because we found that they were justified by exigent circumstances. Id. at 892. Pembaur's argument ignores a factual distinction between Shye and McKinney; the arrests in Shye were made without a warrant. The distinction is critical because McKinney indicated that the issuance of an arrest warrant itself could be "an exceptional circumstance obviating the need for a search warrant." 379 F.2d at 263. Consequently, Shye did not change the rule of McKinney. Indeed, that rule was not changed until four years after the actions complained of by Pembaur. See Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Whalen's actions, therefore, did not violate any clearly established constitutional right. In fact, his instructions to the officers accorded with the law as it stood in 1977. Accordingly, he was entitled to the defense of good faith immunity and the dismissal of the damage claims against him was proper. No injunctive or declaratory relief was sought.
 
 II
 
 12
 Pembaur also sought to impose liability on the County for the actions of the Sheriff and the Prosecutor. The district court, however, concluded that the County could not be held liable for the policies of the Sheriff because the Sheriff was not subject to the control of the Board of Commissioners (Board), the County's governing body. The court reasoned that the Sheriff's powers and duties were established by the state legislature, a fact which presumably rendered them state officials. Although the district court did not decide whether the County could be held liable for the policies of the Prosecutor, it did hold that Pembaur suffered no constitutional deprivation as a result of county policy or custom.[1]
 
 
 13
 In Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), the Supreme Court held that a local government can be liable in a Sec. 1983 action when its official policy or governmental custom is responsible for a deprivation of constitutional rights.[2] Apparently recognizing that a local government's "official policy" can originate from more than one source, the Court stated "... it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983." Id. (emphasis added). See also Owen v. City of Independence, 445 U.S. 622, 657-58, 100 S.Ct. 1398, 1418-19, 63 L.Ed.2d 673 (1980). Thus, the Board's lack of control does not necessarily preclude a finding of liability on the part of the County. We must determine whether the nature and duties of the Sheriff are such that his acts may fairly be said to represent the County's official policy with respect to the specific subject matter.
 
 
 14
 Initially, we note that the district court is incorrect to the extent that its decision implies that the Sheriff is not a County official. The Sheriff is elected by the residents of the County, OHIO REV.CODE ANN. Sec. 311.01 (Baldwin 1982), and serves as the "chief law enforcement officer of the county." 1962 Op.Att'y Gen. No. 3109. He submits his budget requests to the Board, OHIO REV.CODE ANN. Sec. 311.20, which in turn furnishes his office, books, furniture, and other materials. OHIO REV.CODE ANN. Sec. 311.06. His salary and all training expenses are also paid out of the general county fund. OHIO REV.CODE ANN. Secs. 325.01-06. Although none of these factors is itself determinative, we believe it is obvious that the Sheriff is a County official. Moreover, we believe that the duties of the Sheriff, as enumerated in OHIO REV.CODE ANN. Sec. 311.07, and his responsibility for the neglect of duty or misconduct of office of each of his deputies, see OHIO REV.CODE ANN. Sec. 311.05, clearly indicate that the Sheriff can establish county policy in some areas. We conclude, therefore, that, in a proper case, the Sheriff's acts represent the official policy of Hamilton County and, as such, may be the basis for the imposition of Sec. 1983 liability.[3]
 
 
 15
 This, however, does not end our inquiry. To impose liability upon the County, Pembaur "must identify the policy, connect the policy to the [County] and show that the particular injury was incurred because of the execution of that policy." Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir.1984) (en banc). We believe that Pembaur failed to prove the existence of a county policy in this case. Pembaur claims that the deputy sheriffs acted pursuant to the policies of the Sheriff and Prosecutor by forcing entry into the medical center. Pembaur has failed to establish, however, anything more than that, on this one occasion, the Prosecutor and the Sheriff decided to force entry into his office. See Rowland v. Mad River Local School District, 730 F.2d 444, 451 (6th Cir.1984). That single, discrete decision is insufficient, by itself, to establish that the Prosecutor, the Sheriff, or both were implementing a governmental policy.[4] Accordingly, the district court properly dismissed the claim against the County.
 
 III
 
 16
 We believe, however, that the district court erred in dismissing Pembaur's claim against the City. The district court concluded that the only policy or custom followed by officers of the Cincinnati Police Division was that of aiding the deputies in the performance of their duties. This finding is clearly erroneous. Myron Leistler, the Chief of Police for Cincinnati, testified that the policy and past practice of his department was to use whatever force was necessary, including forcible entry, to serve a capias. He also testified that capiases are served routinely on the premises of persons who are not the subjects identified in the capiases. This testimony identifies the policy and connects that policy to the City. It is unclear, however, whether Pembaur's injury was incurred as a result of the execution of the policy. Because the district court erroneously identified the policy at issue, it did not make this determination. We, therefore, remand this case to the district court to make this determination.
 
 IV
 
 17
 For the reasons outlined above, we AFFIRM the dismissal of the claims against Whalen and the County. The dismissal of the claims against the City is VACATED and the case is REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Because it is clear that authorities may not legally search for the subject of an arrest warrant in the home or office of a third party without first obtaining a search warrant, Steagald, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), we must read this language as indicating that, in the district court's view, the obvious constitutional violation that occurred in this case did not result from the policy or custom of either the County or City
 
 
 [2]
 The Court in Monell specifically noted that the Sec. 1983 liability may not be premised upon a respondeat superior theory. 436 U.S. at 691, 98 S.Ct. at 2036; accord Local No. 1903 UAW v. Bear Archery, 617 F.2d 157, 160 (6th Cir.1980)
 
 
 [3]
 Although there appears to be no dispute, we also believe it is clear that the Prosecutor also establishes County policy
 
 
 [4]
 Pembaur's ratification theory is also insufficient to impose liability on the County. In Turpin v. Mailet, 619 F.2d 196 (2d Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), which was cited by Pembaur, the Second Circuit recognized that a governmental policy could be established by ratification. That court held, however, that "absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality ...." Id. at 202. Pembaur has failed to prove any prior pattern of conduct