Scott KIME, et al., Plaintiffs,

v.

Ronald S. WISE, et al., Defendants.

No. C83–1354.

United States District Court,
N.D. Ohio, E.D.

Dec. 17, 1985.

Albert L. Purola, Stewart W. Savage, Purola & Savage, Willoughby, Ohio, for plaintiffs.

Martin J. Murphy, Davis & Young, Cleveland, Ohio, Gregory Sassé, Asst. Co. Pros., Painesville, Ohio, Theodore Klammer, Mastrangelo, Freda & Klammer, Thomas E. Betz, Gallagher, Sharp, Cleveland, Ohio, Andrew P. Buckner, Dworken & Bernstein, Painesville, Ohio, for defendants.

### ORDER

BATTISTI, Chief Judge.

This matter comes before the Court on defendant Lake County's Motion to Dismiss. The plaintiffs Scott Kime, Mary Anne Kime, and David Paul Treat allege violations of their civil rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution as well as violations of 42 U.S.C. §§ 1981, 1983 and 1985(3). Lake County argues that there is no basis upon which liability can attach to Lake County as a result of any actions by defendant William C. Gargiulo, individually and as City Prosecutor for the City of Eastlake. Plaintiffs argue that the recent United States Supreme Court opinions in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), as well as other recent federal court rulings, impose liability on Lake County for the actions of the City Prosecutor. For the reasons set forth below, the Court grants Lake County's Motion to Dismiss.

### I.

In 1978, the United States Supreme Court reexamined the congressional debate on the Civil Rights Act of 1871 and the case law in support of the immunity from actions arising under 42 U.S.C. § 1983, which the Supreme Court had conferred

upon municipalities in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611 (1978), the Supreme Court overruled *Monroe* "insofar as it holds that local governments are wholly immune from suit under § 1983." [1] In *Monell*, the Supreme Court concluded:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694, 98 S.Ct. at 2037.

The change in the law which the Supreme Court's holding in *Monell* brought continued with *Brandon v. Holt*, 469 U.S. 464, ——, 105 S.Ct. 873, 877, 83 L.Ed.2d 878, 885 (1985), where the Supreme Court held that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." (Footnote omitted.)

The lower courts have applied the doctrine established in *Monell* in a large number of cases, and the plaintiffs in many of these cases, like the plaintiffs in the instant matter, have alleged inadequate training of police and other law enforcement officers. *See, e.g., Edmonds v. Dillin*, 485 F.Supp. 722 (N.D.Ohio 1980); *Herrera v. Valentine*, 653 F.2d 1220, 1224–25 (8th Cir.1981); *McClelland v. Facteau*, 610 F.2d 693 (10th Cir.1979); *Owens v. Haas*, 601 F.2d 1242 (2d Cir.1979), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). In applying the holding in *Monell*, a court must determine whether the allegedly unconstitutional act was a result of govern-

---

**1.** In a footnote, the Court expressly upheld that portion of the *Monroe* opinion which held that the doctrine of respondeat superior is not a

basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees.

ment policy or custom as required to impose liability on the municipality.

The task of distinguishing official "policy or custom" of a governmental entity from an isolated act is a difficult one. One court defined "official policy" to include "the tacit or implied approval, authorization or encouragement of police misconduct." *Hill v. Marinelli,* 555 F.Supp. 413, 415 (N.D.Ill. 1982) (citing *Turpin v. Mailet,* 619 F.2d 196, 201–02 (2d Cir.1980)). Normally, a "single, discrete decision is insufficient, by itself, to establish that [individual defendants] were implementing a governmental policy." *Pembaur v. City of Cincinnati,* 746 F.2d 337, 341 (6th Cir.1984), *cert. granted,* — U.S. —, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985).[2] As Justice Rehnquist stated in his plurality opinion in *Oklahoma City v. Tuttle,* 471 U.S. —, —, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985), "the word 'policy' generally implies a course of action consciously chosen from among various alternatives" (footnote omitted).

Until recently, the Sixth Circuit Court of Appeals, together with a number of other courts, interpreted *Monell* to hold that although a single act is not typically enough to infer an official policy, "a municipal custom that authorizes or condones police misconduct can be inferred when the municipality has failed to train or has been grossly negligent in training its police force." *Rymer v. Davis,* 754 F.2d 198, 201 (6th Cir.1985) (footnote and citations omitted). Furthermore, official acquiescence may be inferred from the lack of training "even in the face of only a single brutal incident of police misconduct." *Id.* (citations omitted).

The Supreme Court, however, recently vacated *Rymer,* — U.S. —, 105 S.Ct. 3518, 87 L.Ed.2d 646, in light of its recent decision in *Tuttle, supra.* Although the Justices were unable to agree on an opinion for the Court, seven members of the Court

did agree that a single isolated incident of the use of excessive force by a police officer was insufficient to establish an official policy or practice of the municipality and, thus, to impose § 1983 liability on the municipality under *Monell.*

Even assuming that the individual defendant acted pursuant to official policy or custom, the inquiry into the possible imposition of liability upon defendant Lake County does not necessarily end there. As the Court of Appeals noted in *Pembaur* where the liability of a county was also at issue, plaintiffs " 'must identify the policy, connect the policy to the [county] and show that the particular injury was incurred because of the execution of that policy' " in order to impose liability upon the county. *Pembaur,* 746 F.2d at 341, *cert. granted,* — U.S. —, 105 S.Ct. 3518, 87 L.Ed.2d 646 (quoting *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)).

## II.

With this law in mind, the Court now turns to a closer analysis of plaintiffs' specific allegations against defendant Lake County. Plaintiffs' allegations of constitutional violations revolve around the events of April 21–23, 1982 and the action taken on August 4, 1982 in conjunction with an alleged felony. *See* Amended Complt. 4–6. These allegations include threats and the actual issuance of a felony charge by defendants, other threats, deprivation of liberty, and illegal seizure of certain evidence. When viewed as a whole, the Court holds that these allegations are insufficient for finding that any of the alleged violations of law were committed pursuant to a particular official policy or custom of defendant Lake County. Plaintiffs fail to allege constitutional violations against any other indi-

---

2. In *Pembaur,* the Sixth Circuit held that a showing of a prosecutor's and sheriff's forced entry into an office, without more, did not indicate an official policy of the governmental entity being sued. In a footnote, the Sixth Circuit Court of Appeals recognized that a showing of acquiescence in such allegedly unlawful conduct could possibly lead to an inference of an official policy through some type of ratification theory. Plaintiff in *Pembaur,* however, failed to make such a showing.

viduals, or to provide evidence which would indicate in some way that the actions allegedly taken against the plantiffs were done pursuant to an official policy or custom of Lake County. Even the allegations made do not apply to all three named plaintiffs in this lawsuit.

Plaintiffs might still argue that defendants were acting pursuant to an official policy or custom of defendant Lake County by inferring such policy or custom from the failure to train properly the law enforcement officers named as defendants. In this way, acquiescence in the failure of training serves as evidence itself of an official policy or custom.[3]

The Court, however, does not find it is necessary to grapple with specific definitions of policy or custom to rule on Lake County's Motion to Dismiss at this time. Even if plaintiffs could ultimately establish that the alleged constitutional violations took place pursuant to an official policy or custom, such a showing is still insufficient for specifically holding defendant Lake County liable for these violations. Under the Sixth Circuit Court of Appeals' analysis in *Pembaur*, plaintiffs must not only identify the policy but also show that the particular injury was incurred because of the execution of that policy and then connect that policy to defendant Lake County. *See Pembaur*, 746 F.2d at 341 (quoting *Bennett v. City of Slidell, supra.*)[4] The Court recognizes that *Monell* imposes liability on governmental entities even where the viola-

tive policy or custom is not sanctioned or created by that entity's official lawmakers. Thus, the injurious policy can be made by the entity's lawmakers "or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Nevertheless, such a policy or custom must still be somehow connected with the governmental entity on which liability is being imposed.

The Court holds that plaintiffs have failed to connect the official policy in question, if any indeed exists in this case, to defendant Lake County. The entire notion of holding a municipality or some other governmental entity liable under § 1983 rests upon the belief that that entity is somehow represented by the individual person who is specifically named as a defendant and who actually committed the alleged constitutional violation. It would be fundamentally unfair to impose liability, even after *Monell*, upon any municipality or other governmental entity for the acts of a person who is unrelated to that municipality or entity. Thus, in *Brandon*, the Supreme Court concluded that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that *he represents*." 469 U.S. 464, ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878, 885 (emphasis added).

The Sixth Circuit's analysis of this required connection between policy and entity is instructive in this present matter. In *Marchese v. Lucas*, 758 F.2d 181 (6th Cir.

**3.** In his plurality opinion in *Tuttle*, 471 U.S. ——, —— n. 7, 105 S.Ct. 2427, 2436 n. 7, 85 L.Ed.2d 791, 804 n. 7, Justice Rehnquist expressly withheld any opinion "on whether a policy that itself is not unconstitutional, such as the general 'inadequate training' alleged here, can ever meet the 'policy' requirement of *Monell*. In addition, even assuming that such a 'policy' would suffice, it is open to question whether a policymaker's 'gross negligence' in establishing police training practices could establish a 'policy' that constitutes a 'moving force' behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required." This Court is fully aware of the fact that only three other Justices joined in this part of the opinion. Nevertheless, Justice Rehnquist's comments do provide some guidance here in determining

some of the contours of the nebulous concept known as "policy." Moreover, this allegation of improper training was in the end rejected in *Tuttle*, and § 1983 liability was not imposed on the municipality—a city in that case.

**4.** Additional guidance on this point is given in *Tuttle*. For example, Justice Rehnquist notes that liability under *Monell* requires, *inter alia*, that the policy, once identified, be attributed to a municipal policymaker. In the instant case, that would require attributing the policy in question to a *county* policymaker before Lake County could be held liable. —— U.S. at ——, 105 S.Ct. at 2436, 85 L.Ed.2d at 804. *See also* —— U.S. at ——-——, 105 S.Ct. at 2438–41, 85 L.Ed.2d at 807–10 (Brennan, J.).

1985), the Court imposed liability on the sheriff for § 1983 violations involving the beating of a prisoner. In holding the county also liable, the Court found it necessary to examine the relationship between the sheriff and the county. The court noted, for example, that although the county did not make policy for the sheriff's department, the sheriff was in fact the law enforcement arm of the county and did make policy in police matters for the county. The county appropriated funds and established the budget for the sheriff's department, and the sheriff was directly elected by the voters in the county. On this evidence, the Court was able to conclude that "the relationship between the County and the Sheriff's Department is so close as to make the County liable for the Sheriff's failure to train and discipline his officers and his ratification of the use of wanton brutality by members of his force." 758 F.2d at 189.

In *Pembaur*, which also involved a sheriff's conduct, the Sixth Circuit once again examined closely the relationship between the sheriff and the county when deciding the county's liability. Following evidence that was similar in nature to that used in *Marchese*, the Court in *Pembaur* concluded that "the Sheriff's acts *represent* the official policy of Hamilton County and, as such, may be the basis for the imposition of § 1983 liability." 746 F.2d 337, 341 (emphasis added and footnote omitted).

None of the indicia of relatedness exists here which would allow the Court to connect any official policy possibly involved in this present case to defendant Lake County. Neither defendant William C. Gargiulo

nor the police officers who are defendants in this case are elected by the residents of Lake County. Lake County does not establish the budget for the prosecutor's office for the City of Eastlake or for that city's police department, nor does the county regularly appropriate funds to those individuals. Obviously, the city prosecutor for the City of Eastlake is not the law enforcement arm of Lake County and does not establish policy in police matters for the county.

Plaintiffs allege in their complaint that Lake County, together with the City of Eastlake, "designated" defendant William C. Gargiulo as City Prosecutor and that Mr. Gargiulo acted in both the city's and county's name. Amended Complt. at 4. Yet in the very same paragraph, plaintiffs state that the City of Eastlake was the employer of Mr. Gargiulo. If Mr. Gargiulo were hired by both the City of Eastlake and Lake County, there would appear to be little need for a clear distinction between county and city prosecutors. Needless to say, the Ohio Revised Code makes a clear distinction between these two individuals. *See, e.g.,* ch. 309; § 1901.34 O.R.C. The Ohio Revised Code delegates separate and specific tasks to each individual, and each prosecutor operates under the control of a separate and distinct entity—one a city authority, the other a county authority.

This is not to say that there is no overlap between the responsibilities delegated to the two positions.[5] There is indeed some overlap between the two roles.[6] But such limited overlap does not mean that Lake County is immediately responsible for all the acts of the city prosecutor. To impose liability on Lake County in this situation would indeed seem anomalous especially in

---

5. Indeed, plaintiffs point out that in addition to being employed by the City of Eastlake, Mr. Gargiulo "was duly employed by the County Commissioners, Lake County, as prosecuting attorney for the State of Ohio relating to State of Ohio cases arising in the City of Eastlake and prosecuted in the Willoughby Municipal Court." Amended Complt. 3.

6. As plaintiffs note, § 1901.34(A) O.R.C. provides that the "Village Solicitor, City Director of Law, or similar chief legal officer shall perform the same duties, as far as they are applicable thereto, as are required of the prosecuting attor-

ney of the county." This overlap essentially involves the prosecution of state law violations occurring within the municipal corporation— the type of violation which is at issue in this case. The county prosecutor receives no additional compensation for such tasks; the city prosecutor receives "additional compensation to be paid from the treasury of the county as the board of county commissioners prescribes." The board of county commissioners may also reimburse city prosecutors acting as prosecuting attorney of the mayor's court. § 733.52 O.R.C.

light of the fact that Mr. Gargiulo was appointed under a city ordinance in the first place. *See* Deft. Motion to Dismiss.

Plaintiffs argue that despite the lack of any statutory authority, defendant Lake County should nevertheless exercise control over defendant Mr. Gargiulo, because the city prosecutor can prosecute violations of state law and for such services can receive "additional compensation to be paid from the treasury of the county as the board of county commissioners prescribes." § 1901.34(A) O.R.C. From this authority, which in fact is discretionary on the part of the county commissioners, plaintiffs argue that full control and thus full responsibility for the city prosecutor's behavior should rest with Lake County. Neither this type of control nor the resultant responsibility is warranted under the Ohio Revised Code or any other principle of law.

In light of the foregoing reasons, this Court finds that there is no basis upon which liability can attach to Lake County as a result of any actions taken by Mr. Gargiulo in the instant matter. Defendant Lake County's Motion to Dismiss is hereby granted, and Lake County is accordingly dismissed from this action.

IT IS SO ORDERED.