Bertold J. PEMBAUR, M.D.,
Plaintiff–Appellant,
Cross–Appellee,

v.

CITY OF CINCINNATI, Defendant,

Hamilton County, Ohio, et al.,
Defendants–Appellees,
Cross–Appellants.

Nos. 87–4061, 87–4130.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1989.

Decided Aug. 18, 1989.

Andrew S. Lipton, Manley, Burke & Fischer, Cincinnati, Robert E. Manley (argued), Cincinnati, Ohio, for plaintiff-appellant, cross appellee.

Jerry F. Luttenegger, Asst. City Sol., and Roger E. Friedmann, Asst. Pros. Atty. (argued), Cincinnati, Ohio, for defendants-appellees, cross appellants.

Before KRUPANSKY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOGGS, Circuit Judge.

Pembaur appeals a judgment awarding him only nominal damages in this civil rights action, and Hamilton County (the County) cross-appeals. He claims that, once a violation of his rights has been shown, he should be compensated fully for his injuries. The trial judge awarded nominal damages based on his finding that any injuries Pembaur suffered were not proximately caused by the civil rights violations.

## I

### A

Pembaur filed this federal action under 42 U.S.C. § 1983 on April 20, 1981, one day after the Supreme Court issued its opinion in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), which held that an illegal search amounts to a violation of § 1983. After a trial in 1983, the district judge issued findings of fact and conclusions of law, ruling in favor of the defendants. The judge found that the individual defendants were immune from suit, and that the County and City were not liable because Pembaur had not suffered a constitutional deprivation committed pursuant to official policy. On appeal by Pembaur, this court affirmed as to the County, but reversed as to the City. 746 F.2d 337 (6th Cir.1984). Pembaur sought review in the Supreme Court, and the Court reversed as to the County and remanded the case. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Court stated that Pembaur had suffered a constitutional deprivation (a fourth amendment violation stemming from the entry into and search of his medical offices), and that the deprivation was the result of a decision deliberately made by a prosecutor. The Court further stated that "municipal liability can be imposed for a single decision by municipal policymakers under appropriate circumstances." The Court continued by stating that a situation in which an official makes a deliberate choice from among alternatives, when that official is responsible for setting policy on that subject, is one of the situations in which municipal liability is appropriate.

On remand, after a second trial, the court found that the County was liable for its violation of Pembaur's rights, but awarded only $1000 in nominal damages, stating that Pembaur's injuries were not proximately caused by Hamilton County's acts.

### B

Pembaur is a physician licensed to practice medicine by the state of Ohio. He specializes in family medicine, and has been practicing in Cincinnati for over thirty years. Pembaur is the sole proprietor of the Rockdale Medical Center.

On May 19, 1977, two unidentified persons entered the reception area of the office, and sought to enter the inner offices. Pembaur barred the door to prevent their entry. The two people then identified themselves as deputy sheriffs bearing capiases to bring two of the doctor's employees before the grand jury. The capiases set forth the two persons' home addresses, not the medical center's address.

The deputies asked Pembaur to let them into the inner office to search for the two employees. Pembaur refused entry because the deputies did not have a search warrant. Shortly thereafter, Cincinnati police arrived in response to Pembaur's call. They told the doctor to allow the deputies to enter, but he again refused. The police then called for a supervisor and a sergeant arrived, again asking Pembaur to allow them entry. Pembaur continued to refuse without a search warrant ordering him to do so.

Pursuant to department policy, the officers then called the sheriff's execution officer, who advised them to call William Whalen, assistant county prosecutor. They did so, and Whalen spoke with Simon Leis, then Hamilton County Prosecutor. Leis told Whalen to tell the deputies to "go in and get them." The deputies then tried to batter the door down, but failed, and a

Cincinnati police officer went to a fire station and obtained an axe with which he then chopped the door down. The deputies and police officers then entered the office and searched for the persons named in the capiases, who were not in the office.

After this incident, Pembaur was indicted for obstructing or delaying the deputies in the performance of their duties. Pembaur was convicted, but the conviction was reversed on appeal, the court finding that Pembaur's fourth amendment rights had been violated. *State v. Pembaur,* No. C-790380 (Hamilton County Court of Appeals Nov. 3, 1982). However, the Ohio Supreme Court reinstated the conviction on the ground that Pembaur may have had a remedy for any constitutional violation in a civil action for damages, but that he had no right to refuse entry even if the entry under the circumstances was unconstitutional. *State v. Pembaur,* 9 Ohio St.3d 136, 459 N.E.2d 217 (1984), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984).

### C

After remand from the Supreme Court, the parties stipulated that the factual matters in the transcript of the earlier civil trial need not be repeated but would be considered as before the court in the second trial. Testimony at the second trial, in April 1987, was limited to two issues: 1) the liability of the municipality; and 2) damages. Pembaur is not appealing the finding in favor of the City of Cincinnati.

With respect to damages, Pembaur testified about his stress-related injuries and economic losses. Dr. Burke, an economist, testified for Pembaur and was not cross-examined. In addition, the deposition of Dr. McDevitt, a psychiatrist, was submitted on Pembaur's behalf.

Pembaur testified that the violent nature of the incident, and the large number of officers present, made this event different from other stressful events in his life. In addition to the May 19 incident, on April 26, 1977, there had been a lawful search and seizure of medical records, which Pembaur stated compounded the stress he experienced on May 19. Dr. McDevitt testified that the chopping up and breaking down of the door was the most stressful aspect of the incident for Pembaur. The stress caused "hypervigilance" and the fear of a fatal heart attack.

As regards economic losses, Pembaur testified that he saw 60 to 90 patients a day before May 19, but that his patient load dropped off after the incident by about 50%. No similar decrease resulted from the April 26 seizure of medical records. On May 19, patients had tried to enter the office, but could not because of the large number of police and deputies in the waiting room and outside the office. Pembaur testified that his patients stayed away after that because they were suspicious and afraid that they would get involved in a police-related incident. Pembaur testified that this drop-off of patients resulted in a loss of income which did not begin to improve until 1981, and even then never returned to 1976 levels. Dr. Burke, the economist, quantified the losses on a yearly basis, and calculated their present values. Dr. Burke stated that Pembaur's economic situation peaked in 1976 and began to drop after that, remaining erratic. Dr. Burke concluded that Dr. Pembaur's loss of income from 1977–1986 had a present value as of the date of his testimony of over $2,000,000.

The appeal is limited to the May 19 events, and to the decision regarding Hamilton County. Information in the appendix refers to a separate charge of Medicaid fraud, and Pembaur's absence from the country at the time of the indictment. These are discussed in the context of determining the sources of Pembaur's stress.

The trial judge reasoned that precedent indicates that when consequential damages are not readily ascertainable, nominal damages may be awarded. (citing *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1985)). Because the trial judge could not determine an ascertainable proximate cause for Pembaur's injuries, he thus found that an award of nominal damages was appropriate.

## II

On appeal, Pembaur argues that the trial judge was inconsistent and unclear in his findings regarding his stress-related injuries. Further, he alleges that nominal damages should be awarded only when no injury can be identified, *not* when the difficulty is ascertaining the cause of the injury. Pembaur also claims that his business losses were substantial and easily ascertained, and that the trial judge erred in failing to do so. In its cross-appeal, Hamilton County argues that Pembaur's injuries were not proximately caused by the events of May 19; that the decision in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), which held that § 1983 liability attaches when an officer searches the premises of a third person in an attempt to locate the subject of an arrest warrant, should not have been applied retroactively in this case; and that if *Steagald* is applied retroactively, then so should recent decisions regarding the statute of limitations in § 1983 actions, which would render this action time-barred.

## III

We reverse the decision of the district judge on the ground that the trial judge failed to give adequate consideration or explanation for his decision that Pembaur's stress-related injuries could not be related to the incident at issue in this case. Further, the judge made no mention whatsoever of Pembaur's claims regarding his business losses. These omissions are fatal to the judgment in this case.

 In *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), the Supreme Court explained the law regarding awards of damages under § 1983. First, the Court noted that the "level of damages is ordinarily determined according to principles derived from the common law of torts." *Id.* at 306, 106 S.Ct. at 2542. These damages may include compensatory damages including "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" *Id.* at 307, 106 S.Ct. at 2543. The purpose of compensatory damages is to compensate the injured party for the costs of the injury; thus, in the absence of an injury, compensatory damages are inappropriate. *Ibid.*

 When the alleged injury is the violation of a constitutional right, as here, *"no compensatory damages could be awarded for violation of [a] right absent proof of actual injury."* *Id.* at 309–10, 106 S.Ct. at 2544 (citing *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (emphasis in original)). In *Carey*, the Court held that although there had been a violation of procedural due process rights, only nominal damages could be awarded in the absence of proof of actual emotional and mental distress, and its consequent injury. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1053. The *Stachura* Court reaffirmed *Carey's* reasoning, and stated that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages...." *Stachura*, 477 U.S. at 310, 106 S.Ct. at 2545.

However, in such cases, presumed damages may be appropriate. *Ibid.* "[P]resumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure." *Ibid.* *Accord Bell v. Little Axe Independent School District No. 70 of Cleveland County*, 766 F.2d 1391, 1412 (10th Cir.1985); *Herrera v. Valentine*, 653 F.2d 1220, 1228 (8th Cir.1981).

 Further, the injury need not have been a physical one. Damages for pain and suffering, mental anguish, and the like are available to the extent that actual injury has been proved. *Brandon v. Allen*, 719 F.2d 151, 154 (6th Cir.1983), *rev'd on other grounds*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1983). In *Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250, 1259 (6th Cir.1985), this court awarded only nominal damages when the plaintiff's only proof of emotional injury was his claim that he was "highly upset."

■ Thus, as *Carey* commands, a court must determine whether there is a common law analog to the "constitutional tort" being alleged. *Herrera*, 653 F.2d at 1230 (citing *Carey*, 435 U.S. at 258, 98 S.Ct. at 1049). The trial judge in the present case did no such analysis. Although Pembaur claimed emotional distress and mental anguish as well as harm to business reputation with consequent business losses, the judge did not use the above precedents or Ohio tort law in search of a common law analog, the damage rules of which could be applied to the actions which allegedly caused the injuries in this case. The trial judge awarded only nominal damages for Pembaur's alleged emotional injuries, reasoning that Pembaur had not shown that the violation of his fourth amendment rights *caused* all or even a particular part of those injuries. He explained that, because it was impossible to quantify the amount of the injuries flowing from the violation, he would award only nominal damages. The judge failed even to mention Pembaur's alleged economic losses.

However, the trial judge heard expert testimony regarding Pembaur's business losses, as well as Pembaur's testimony and a psychiatrist's deposition regarding Pembaur's mental state. Thus, he was presented with evidence regarding the sources of Pembaur's alleged injuries. Yet, he did not indicate whether he rejected the *existence* of some or all of the business losses and stress-related symptoms, or rather denied that they were *caused* by the fourth amendment violations. He implied that some of Pembaur's stress could have been caused by separate charges of Medicaid fraud against Pembaur, but made no factual findings to resolve the issue. In such cases, it is not enough for a trial judge to throw up his hands in what might be wholly understandable frustration. The inquiry demanded by the law must be conducted in a full and fair manner, and a factual basis for resolving the appropriate amount of damages must be sought until it is found or declared not to exist.

Thus, we remand the case for further findings of fact as to the sources and amounts of the injuries to Pembaur's financial and emotional conditions.

## IV

■ The County alleges an alternative ground for reversing the district court's decision that would not require further proceedings. The County argues that *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), decided four years after the incident involved in this case, should not have been applied retroactively to provide a basis for compensation for a violation of the fourth amendment. Indeed, prior to the decision in *Steagald*, the law of this Circuit was that a search warrant was not required to search premises belonging to a third party for the subject of an arrest warrant when the police had both an arrest warrant and reason to believe that the person to be arrested was inside the premises. *United States v. McKinney*, 379 F.2d 259, 262–63 (6th Cir. 1967). Thus, at the time of the incident complained of, the law of this Circuit would not have allowed compensation for any injuries which flowed from such an incident.

The rules for determining the retroactivity of a judicial decision are found in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). There, the Court announced three factors that should be considered in determining the retroactivity of a judicial decision. A court should consider, first, whether the new decision "establishes a new principle of law"; second, "whether retrospective operation will further or retard its operation"; and third, "the inequity imposed by retroactive application...." *Id.* at 107, 92 S.Ct. at 355.

When viewed in light of these three factors, the retroactive application of *Steagald* would be an intriguing legal issue. *Steagald* clearly changed the law of this Circuit, *McKinney*, 379 F.2d at 262–63, and thus the retroactive application of *Steagald* would frustrate any reliance the police placed on the law existing at the time they took their actions. Had the municipality had notice that it might incur liability by pursuing the actions it did on May 19, 1977, it may very well have pur-

sued a different course of conduct. On the date of the alleged incident, the actions taken did not create legal liability. Applying a different rule after the fact could be considered unjust. Chief Justice Burger and Justices Powell and Rehnquist took that position in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 494, 106 S.Ct. 1292, 1306, 89 L.Ed.2d 452 (1986) (Powell, J., dissenting). Only Justice Stevens explicitly argued to the contrary. *Id.* at 488, 106 S.Ct. at 1302 (Stevens, J., concurring).

However, Pembaur argues that we are precluded from reversing the district court's decision on these grounds, and we must agree. When the Supreme Court considered this case previously, the issue of the retroactivity of *Steagald* was addressed by the Court, albeit in a fragmented manner. The judgment of the Court was announced in an opinion to which three Justices subscribed fully: Brennan, Marshall and Blackmun. Section IIA of that opinion contained a footnote stating that the issue of the retroactivity of *Steagald* had been conceded by the County and that the case was being decided in light of that concession. *Id.* at 477 n. 5, 106 S.Ct. at 1297 n. 5. Three additional Justices stated that they joined in Section IIA of the opinion, though each wrote separately.

Justice Stevens argued that *Steagald* definitely should be applied retroactively and stated that it was "not at all surprising that respondents have 'conceded' the retroactivity of *Steagald.*" *Id.* at 488, 106 S.Ct. 1302. The placement in quotation marks of the word "conceded" could imply some doubt on his part that the issue had actually been conceded.

Justice White concurred separately, apparently fearing that the plurality opinion implied that the decision of a single municipal decisionmaker could be taken, as a general matter, to establish policy. In this particular case, however, he had no doubt that the prosecutor's opinion *was* the municipal policy since that policy was in perfect accordance with existing law. *Id.* at 486, 106 S.Ct. at 1301 (White, J., concurring). Justice White stated in a footnote that the "County has not challenged the retroactivity of *Steagald* … and I do not

address that issue." *Id.* at 487 n. \*, 106 S.Ct. at 1302 n. \*. This footnote is certainly something less than a full endorsement of the position that the County *conceded* the retroactivity of *Steagald,* and does not refer to the plurality's declaration of that concession.

Justice O'Connor also wrote separately, taking a position similar to Justice White's on the substance of the case. *Id.* at 491, 106 S.Ct. at 1304. Justice O'Connor specifically stated that she joined "only Parts I and IIA of the Court's opinion" and did not advert to the retroactivity issue.

The various opinions create something of a quandry with regard to the question of the County's concession. On one view of the case, six Justices formally joined in Section IIA of the opinion, and that Section clearly states that the County conceded the issue of *Steagald's* retroactivity. *Id.* at 477 n. 5, 106 S.Ct. at 1297 n. 5. At the same time, each of the three Justices who wrote separately did so in a way that makes it possible to argue that they did not concur fully in that footnote. Justice White's separate footnote takes quite a different tone than that of the plurality opinion. *Id.* at 487 n. \*, 106 S.Ct. at 1302 n. \*. Justice Stevens's highlighting of the word "conceded" could imply that he found the concession less clear than did the plurality. *Id.* at 488, 106 S.Ct. at 1302. And Justice O'Connor made no mention of the issue. *Id.* at 491, 106 S.Ct. at 1304.

At the same time, not only are the holdings of the Supreme Court binding on this court, but obviously, the Court is in the best position to determine the import of concessions and arguments made in open court before it. We thus believe it the more prudent course to hold that this issue was conceded before the Supreme Court, at least until that Court speaks more clearly.

Since the Supreme Court has determined that the concession occurred, the County may not now attempt to undo the concession. In general, when an official litigant fails to raise a challenge timely, or concedes an issue, it cannot be raised for the first time this late in the proceedings. *Steagald v. United States,* 451 U.S. 204, 210 n. 5, 101 S.Ct. 1642, 1647 n. 5, 68 L.Ed.2d 38 (1981); *United States v. Johns,*

707 F.2d 1093, 1100 n. 6 (9th Cir.1983); *United States v. Anderson,* 663 F.2d 934, 938–39 n. 4 (9th Cir.1981). Further, there is no indication in the record that this issue was raised before the district court; in fact, the County states in its brief on appeal that the issue has never been fully briefed. Brief for Appellant at 9. The Supreme Court's remand of this case was for consideration of any further issues; thus, any additional challenges should have been raised in the district court.[1]

## V

Thus, we find that the trial judge cited inadequate factual support for his conclusions regarding damages in this case, and therefore this case must be remanded for further factual findings. Accordingly, we VACATE the district court's decision regarding damages and REMAND for further factual findings regarding the nature, extent, and causation of Pembaur's injuries.

---

**1.** Also for the first time on appeal, the County argues that the Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), should be applied retroactively to render the instant action time-barred. *See also Owens v. Okure,* — U.S. —, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (holding that a state's general personal injury statute of limitations applies to § 1983 actions). However, it is well-settled that statutes of limitations generally create affirmative defenses which

must be raised expressly or else are waived. Fed.R.Civ.P. 8(c); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Wade v. Orange County Sheriff's Office,* 844 F.2d 951 (2d Cir.1988).