947 F.2d 945
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bertold J. PEMBAUR, M.D., Plaintiff-Appellant, Cross-Appellee,
v.
CITY OF CINCINNATI, Defendant,
Hamilton County, Ohio, Defendant-Appellee, Cross-Appellant.
 Nos. 90-3890, 90-3915.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1991.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and McRAE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Bertold J. Pembaur, M.D., appeals from a decision of the district court awarding him only presumed damages, amounting to $5,000, for a constitutional violation perpetrated by defendants, and seeks compensatory damages from this court. Hamilton County cross-appeals, maintaining that the case should have been dismissed. For the reasons given below, we reject both appeals and affirm the judgment of the district court.
 
 
 2
 * Dr. Pembaur owned and operated the Rockdale Medical Center in Cincinnati during the late 1970's. During the spring of 1977, a Hamilton County Grand Jury began investigating charges that Pembaur committed fraud to obtain Medicaid payments from Ohio. As part of this investigation, on April 26, 1977, police officers acting pursuant to a search warrant seized approximately 35,000 records, almost all of which were returned within a few weeks. This seizure and investigation received extensive publicity in the Cincinnati area.
 
 
 3
 A few weeks later, the Grand Jury issued subpoenas to Marjorie McKinley and Kevin Maldon, two employees at the clinic, directing them to testify. When they failed to appear, capiases were issued for their arrest. On May 19, 1977, two Hamilton County deputy sheriffs attempted to serve the capiases at the clinic. They entered the public reception area, identified themselves to the receptionist, and attempted to pass through a door next to her office that led into the rest of the clinic. However, the receptionist blocked their path. When Dr. Pembaur appeared, he and the receptionist closed the door and wedged it shut with a piece of wood. Although the deputy sheriffs explained their purpose, Dr. Pembaur refused to let them enter and told them he had contacted the local media, the police, and his lawyer.
 
 
 4
 Soon afterward, several Cincinnati police officers arrived at the clinic. When they failed to persuade Dr. Pembaur to open the door, the deputy sheriffs decided to call their supervisor for instructions. The supervisor contacted Assistant Prosecutor William Whalen, who then spoke to County Prosecutor Simon Leis. Leis told Whalen to instruct the Deputy Sheriffs to "go in and get them." Acting on these instructions, the deputy sheriffs tried to force open the door, but failed. A city police officer, who knew of the County Prosecutor's instructions, took an axe from a nearby fire station and chopped down the door. The witnesses were not found.
 
 
 5
 On June 24, 1977, the Grand Jury indicted Dr. Pembaur on six counts. The sixth count, charging him with obstruction of official business, arose from the events of May 19, and was heard separately from the others. Dr. Pembaur was convicted on this count, and this conviction was ultimately upheld by the Ohio Supreme Court. State v. Pembaur, 9 Ohio St.3d 136, 459 N.E.2d 217, cert. denied, 467 U.S. 1219 (1984). In December 1979, two days before his trial on the remaining indictments began, Dr. Pembaur left the United States, traveling through Canada and ending in Austria. He returned to this country in August 1980. In his absence, two physicians attended his patients at the Rockdale Center, where he was the principal physician. He did not have permission to leave the country, and did not inform any agent of Hamilton County of his plans to do so. However, he maintains that he left to obtain medical treatment for a heart condition, and in fact he was ultimately acquitted on a charge of failing to appear at trial. Trial on the remaining five counts of the original indictment began on April 27, 1981, and on June 19, 1981, Dr. Pembaur was found not guilty of all remaining counts. During the course of the criminal trials and appeals, he spent sixty-four days in court over seven years.
 
 
 6
 On April 19, 1981, the Supreme Court decided Steagald v. United States, 451 U.S. 204 (1981), which held that absent special circumstances, a law enforcement officer could not legally search for the subject of an arrest warrant in the home of a third party, without first obtaining a search warrant. The next day, Dr. Pembaur filed this suit, seeking damages under 42 U.S.C. § 1983 for an unreasonable search of the Rockdale Center on May 19, 1977. The suit named as defendants the officers involved in the search, the lawyers who had authorized it, and the city and county governments. The judge at the original trial ruled that the individual defendants were immune from suit, and that Cincinnati and Hamilton County were not liable since any violation of Dr. Pembaur's rights had not resulted from official policy. On appeal, the Sixth Circuit affirmed as to the County, but reversed as to Cincinnati. Pembaur v. City of Cincinnati, 746 F.2d 337 (6th Cir.1984). The Supreme Court granted review, reversed as to the County, and remanded the case. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).
 
 
 7
 On remand, the district court found that while Cincinnati's agents were merely helping a sister government, Hamilton County was liable for violating appellant's rights. However, the district court concluded that the County's actions were not the proximate cause of Dr. Pembaur's injuries, and awarded him only $1,000 in nominal damages. The Sixth Circuit vacated and remanded this opinion, finding that "the trial judge cited inadequate factual support for his conclusions regarding damages in this case." Pembaur v. City of Cincinnati, 882 F.2d 1101, 1107 (6th Cir.1989) The district court held a hearing on February 28, 1990 to calculate damages. After a more lengthy discussion of the facts, it again found that Dr. Pembaur failed to demonstrate what emotional stress and business loss was caused by the constitutional violation of May 19, 1977, rather than by the other controversies surrounding him. Therefore, the court determined that he was entitled only to presumed damages and ordered Hamilton County to pay $5,000. Pembaur v. City of Cincinnati, 745 F.Supp. 446 (S.D. Ohio 1990) Both parties appeal to this court.
 
 II
 
 8
 Damages under 42 U.S.C. § 1983 must be measured by normal tort law principles. Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299 (1986); Carey v. Piphus, 435 U.S. 247 (1978). This rule prevents juries from awarding arbitrary amounts without any evidentiary basis, and from using their unbounded discretion to punish unpopular defendants. 477 U.S. at 310. However, presumed damages, which have long been used to remedy torts, may also be awarded whenever "a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish." 477 U.S. at 310-11. In this case, the district court concluded that trespass is the common law tort most similar to the unlawful actions of the County in this case. Since the injury occurred in Ohio, the court applied the damages rules of Ohio courts in trespass actions.
 
 
 9
 In Ohio, every trespass constitutes a legal injury, which entitles the property owner to some damages. Pearl v. Pic Walsh Freight Co., 112 Ohio App. 11, 168 N.E.2d 571, 573 (1960). However, Ohio plaintiffs who seek compensatory damages for a trespass must "prove that the trespass proximately caused the harm for which compensation is sought and [are required] to prove the amount of the damage." Allstate Fire Ins. Co. v. Singler, 14 Ohio St.2d 27, 236 N.E.2d 79, 81 (1968) (emphasis added). Applying these rules to Dr. Pembaur's case, the district court began by discussing his claim for emotional injury, for which Ohio law allows damages. See Baker v. Shymkiv, 6 Ohio St.3d 151, 451 N.E.2d 811 (1983) (awarding damages for emotional distress caused by intentional trespass). The court stated that while appellant presented evidence of stress, he had "made no attempts to produce evidence which demonstrates what portion of the stress complained of is directly attributable to the May 19, 1977 incident." 745 F.Supp. at 457. Since Dr. Pembaur was under stress from several causes, the district court concluded that any damage award in the absence of such evidence would depend upon "speculation and caprice" and denied this claim for compensation. The district court then turned its attention to Dr. Pembaur's claimed economic injuries, and held that he could claim no business loss for any time subsequent to his leaving the country. It found that appellant "in effect abandoned his patients without warning and effectively cut himself off from his practice at the Rockdale Center." Ibid. It also concluded that appellant failed to demonstrate what portion of his business loss flowed directly from the events of May 19, 1977, saying "he fails to substantiate this claim with evidence such as statistical analysis, a survey, or testimony of former patients." Ibid.
 
 
 10
 "A district court's ultimate and subsidiary findings concerning causation, negligence, nuisance, trespass, actual damages, and punitive damages, are all factual determinations" and should be upheld unless clearly erroneous. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1198 (6th Cir.1988) (footnotes omitted). Thus, Dr. Pembaur bears a heavy burden on this appeal, since a finding is clearly erroneous only if the reviewing court comes to the "definite and firm conviction" that a mistake occurred. Fed.R.Civ.P. 52(a); Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 11
 Dr. Pembaur attempts to avoid the difficulties of the clearly erroneous standard by raising a purely legal issue, and claiming that the district judge misunderstood the meaning of proximate cause. He argues that the district court erred in treating the other stressful and economically harmful events that occurred to him as independent forces that would have caused his injury even without the County's constitutional violations. Instead, he urges that this court apply the general rule that a tortfeasor must take the plaintiff as the plaintiff is, and thus hold that Hamilton County must pay for all the consequences of its actions. Springsteel v. Jones & Laughlin Steel Corp., 2 Ohio App.2d 353, 192 N.E.2d 81 (1963) He also points out that several proximate causes may contribute to an injury, and that defendants can be held liable for aggravating a plaintiff's previous injury, disease, or disability. Gorman v. Prudential Lines, Inc., 637 F.Supp. 879 (S.D.N.Y.1986); Reeg v. Hodgson, 1 Ohio App.2d 272, 202 N.E.2d 310 (1964).
 
 
 12
 Finally, he claims that many of his other problems were also caused by County officials, and compares this case to Lancaster v. Norfolk & W. Ry., 773 F.2d 807 (7th Cir.1985), cert. denied, 480 U.S. 945 (1987). In Lancaster, the plaintiff maintained that the defendant's final action, coming after a series of earlier persecutions by the defendant, had precipitated his schizophrenia. The defendant contended that the earlier incidents should not have been considered, since they had occurred beyond the statute of limitations period. The court held that excluding the earlier incidents would not prevent the defendant from being liable. "The tortfeasor takes his victim as he finds him (emphatically so if the victim's weakened condition is due to earlier, albeit time-barred, torts of the same tortfeasor); that is the eggshell-skull rule." 773 F.2d at 822. Thus, appellant concludes, stressful events caused by the County cannot serve as independent, intervening causes that negate proximate cause.
 
 
 13
 The principles of proximate cause on which Dr. Pembaur relies clearly constitute Ohio law. In State v. Theuring, 46 Ohio App.3d 152, 546 N.E.2d 436 (1988), the court noted that "[i]ntervening acts, even negligent acts, do not per se eliminate the possibility that a prior act may be the proximate cause of a resulting injury." 546 N.E.2d at 438. It also recognized that "there can be more than one proximate cause of a particular injury." Id. See also Taylor v. Webster, 12 Ohio St.2d 53, 231 N.E.2d 870 (1967). However, appellant's discussion of proximate cause is incomplete. As the district court recognized, a plaintiff must demonstrate that the damage would not have occurred without the injury of which he complains. In Strother v. Hutchinson, 67 Ohio St.2d 282, 423 N.E.2d 467 (1981), the Ohio Supreme Court quoted the following definition of proximate cause from one of its earlier cases:
 
 
 14
 The term "proximate cause" is often difficult of exact definition as applied to the facts of a particular case. However, it is generally true that, where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act united with the original act to cause injury does not relieve the initial offender from liability.
 
 
 15
 423 N.E.2d at 471 ( quoting Clinger v. Duncan, 166 Ohio St. 216, 141 N.E.2d 156 (1957)) (emphasis added). The Strother court also emphasized that "a reasonable foreseeability of injury is considered an element of proximate cause." 423 N.E.2d at 471. A few years later, the Ohio Supreme Court quoted a definition of proximate cause similar to that found in Strother:
 
 
 16
 The proximate cause of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened. The fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence.
 
 
 17
 Bier v. City of New Philadelphia, 11 Ohio St.3d 134, 464 N.E.2d 147, 148 (1984) ( quoting Piqua v. Morris, 98 Ohio St. 42, 120 N.E. 300 (1918)) (emphasis added).
 
 
 18
 Thus, Dr. Pembaur's argument fails unless he can demonstrate that his injuries resulted from the County's actions. Simply to demonstrate that stress or economic loss occurred does not suffice; without more, such evidence allows only speculation as to what damage, if any, should be attributed to the County. The whole purpose of judging § 1983 actions by tort principles is to prevent such speculation. The cases appellant relies upon, such as Gorman and Lancaster, reinforce this conclusion. In those cases, the courts found that the tort complained of either directly caused the injury, or accelerated a result that might have occurred anyway.
 
 
 19
 However, in this case Judge Rubin specifically declined to make such a finding. On the issue of emotional injury, the district court found that "[p]laintiff has made no attempts to produce evidence which demonstrates what portion of the stress complained of is directly attributable to the May 19, 1977 incident." 745 F.Supp. at 457. It reached a similar conclusion regarding economic loss: "Plaintiff insists that the losses flow directly from the incident of May 19, 1977 but he fails to substantiate his claim with evidence such as statistical analysis, a survey, or testimony of former patient." Ibid.
 
 
 20
 Judge Rubin's conclusion in this case is entitled to particular respect because of the factual nature of his finding. As this court has held, "[u]ltimately, the determination whether an independent and intervening act is sufficient to cut off the chain of causation is a factual issue." Grover Hill Grain Co. v. Baughman-Oster, Inc., 728 F.2d 784, 792 (6th Cir.1984). See also Knotts v. United States, 893 F.2d 758 (5th Cir.1990). On the record before us, it appears that although appellant presented evidence regarding his condition, he did not directly address the issue of whether the damages would have occurred without the constitutional violation. Therefore, we do not consider the district court's findings clearly erroneous.
 
 III
 
 21
 As cross-appellant, Hamilton County presents two arguments urging dismissal of this claim. The first appears to be almost identical to a claim considered by this court when it last heard this case. Since Steagald was decided four years after the actions of which Dr. Pembaur complains, it can only be applied to this case retroactively. Hamilton County now asserts that this retroactive application of Steagald was mistaken. They maintain that the retroactivity test in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971), when applied to this case, prevents the retroactive application of Steagald.
 
 
 22
 We have already rejected this argument. When this case last came before us, the County claimed that Steagald "should not have been applied retroactively to provide a basis for compensation for a violation of the fourth amendment." Pembaur v. City of Cincinnati, 882 F.2d 1101, 1105 (6th Cir.1989) While noting that the County raised "an intriguing legal issue," ibid., this court pointed to the comments of the Supreme Court, which seemed to indicate that the issue had been conceded in that Court. Although the opinions were not clear, we determined that "the more prudent course [is] to hold that this issue was conceded before the Supreme Court, at least until that Court speaks more clearly." 882 F.2d at 1106.[1] This concession settled the issue, for "when an official litigant fails to raise a challenge timely, or concedes an issue, it cannot be raised for the first time this late in the proceedings." Ibid. We reiterate that holding today.
 
 
 23
 Hamilton County's alternative claim is an argument that we have also rejected. It maintains that Wilson v. Garcia, 471 U.S. 261 (1985), which instructed courts to choose the state statute of limitations for tort actions for the recovery of damages for personal injuries, should be applied retroactively to render this action barred by the statute of limitations. The County notes that the suit was filed almost four years after the events in dispute, and contends that it is thus well beyond the limit established in Lundblad v. Celeste, 874 F.2d 1097 (6th Cir.1989), modified in part, 924 F.2d 627 (6th Cir.) (en banc), cert. denied, 111 S.Ct. 2889 (1991) (holding that the two-year limit of Ohio Rev.Code Ann. § 2305.10 (Baldwin 1990) should govern § 1983 actions).
 
 
 24
 However, we must reject this argument. As we noted in our previous opinion, "statutes of limitations generally create affirmative defenses which must be raised expressly or else are waived." 882 F.2d at 1107 n. 1. See also Fed.R.Civ.P. 8(c); Wade v. Orange County Sheriff's Office, 844 F.2d 951 (2d Cir.1988); Senter v. General Motors Corp., 532 F.2d 511 (6th Cir.), cert. denied, 429 U.S. 870 (1976); P & E Elec., Inc. v. Utility Supply of Amer., Inc., 655 F.Supp. 89 (M.D.Tenn.1986). The County has given us no good reason to change this conclusion, and we reiterate it today.
 
 IV
 
 25
 Because we agree with the district court's definition of proximate cause, and find no clear error in its determination of the facts, we deny Dr. Pembaur's appeal. At the same time, we continue to reject the claims raised by Hamilton County on its cross-appeal. Therefore, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert M. McRae, Jr., Senior United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The County evidently did not petition the Supreme Court to grant certiorari from that holding